| | |
|---|---|
| AARON J. FISCHER (SBN 247391)<br>  Aaron.Fischer@disabilityrightsca.org<br>ANNE HADREAS (SBN 253377)<br>  Anne.Hadreas@disabilityrightsca.org<br>DISABILITY RIGHTS CALIFORNIA<br>1330 Broadway, Suite 500<br>Oakland, CA  94612<br>Telephone: (510) 267-1200<br>Fax: (510) 267-1201<br><br>TIFANEI RESSL-MOYER (SBN 319721)<br>  Tifanei.Ressl-Moyer@disabilityrightsca.org<br>DISABILITY RIGHTS CALIFORNIA<br>1831 K Street<br>Sacramento, CA  95811<br>Telephone: (916) 504-5800<br>Fax: (916) 504-5801<br><br>DONALD SPECTER (SBN 83925)<br>  DSpecter@prisonlaw.com<br>MARGOT MENDELSON (SBN 268583)<br>  MMendelson@prisonlaw.com<br>SOPHIE HART (SBN 321663)<br>  SophieH@prisonlaw.com<br>PRISON LAW OFFICE<br>1917 Fifth Street<br>Berkeley, California 94710<br>Telephone: (510) 280-2621<br>Fax: (510) 280-2704<br><br>*Attorneys for Plaintiffs* | JESSICA VALENZUELA SANTAMARIA (220934)<br>  jvs@cooley.com<br>MARK A. ZAMBARDA (314808)<br>  mzambarda@cooley.com<br>ADDISON M. LITTON (305374)<br>  alitton@cooley.com<br>COOLEY LLP<br>3175 Hanover Street<br>Palo Alto, CA 94304-1130<br>Telephone: (650) 843-5000<br>Fax: (650) 849-7400<br><br>Attorneys for Plaintiffs |

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORENZO MAYS, RICKY RICHARDSON, JENNIFER BOTHUN, ARMANI LEE, LEERTESE BEIRGE, and CODY GARLAND, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SACRAMENTO<br><br>Defendant. | Case No.: 2:18-cv-02081 TLN KJN<br><br>**CLASS ACTION**<br><br>**DECLARATION OF AARON J. FISCHER IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT OR IN THE ALTERNATIVE PRELIMINARY INJUNCTION RE: MENTAL HEALTH CARE AND SOLITARY CONFINEMENT**<br><br>Complaint Filed: July 31, 2018 |

I, Aaron J. Fischer, declare as follows:

1. I am an attorney admitted to practice before the courts of the State of California and before this Court. I am Litigation Counsel at Disability Rights California and counsel for the Plaintiff Class. I make this declaration in support of Plaintiffs' Motion for Partial Summary Judgment or in the Alternative Preliminary Injunction re: Mental Health Care and Solitary Confinement. If called as a witness, I would and could competently testify to the facts stated herein, all of which are within my personal knowledge.

2. Our office reviewed Defendant's tracking spreadsheet of all Sacramento County Jail ("Jail") acute psychiatric unit (2P) admissions for the period of July 15, 2018 to October 19, 2018. The spreadsheet was produced by Defendant in discovery in this matter. A true and correct copy is attached hereto as **Exhibit A**. The spreadsheet has been redacted to omit confidential, personally-identifying information.

3. Exhibit A lists 129 people who were admitted to the acute psychiatric unit during the above-stated period of time, and includes the specific date of each respective admission to the acute psychiatric unit ("Date In"). Of the 129 admissions, the "Referral" date is listed as "Unknown" in 65 cases. A specific "Referral" date is provided for each of the other 64 cases.

4. In the 64 cases for which Defendant provided a "Referral" date, the average time between Referral date and Admission date is 2.4 days, with at least one case of a person waiting as long as 11 days from Referral for acute psychiatric care to Admission to the acute psychiatric unit.

5. Our office reviewed two tracking spreadsheets of Jail suicide watch placements for a recent period of approximately six months and three weeks. The first tracking spreadsheet covered the period of April 1, 2018 through July 12, 2018. This documents was provided by Defendant on July 16, 2018, before litigation in this matter commenced. The parties have stipulated that such information provided in the pre-litigation phase of this case may be submitted as part of the record to the Court. *See* Dkt. 27 at 1. A true and correct copy is attached hereto as **Exhibit B.** The spreadsheet has been redacted to omit confidential, personally-identifiable information (name and Jail reference number).

6. A second spreadsheet regarding Jail suicide watch placements covered the period of July 15, 2018 through October 22, 2018. This spreadsheet was produced by Defendant in discovery in this matter. A true and correct copy is attached hereto as **Exhibit C**. The spreadsheet has been redacted to omit confidential, personally-identifiable information.

7. Together, Exhibits B and C provide Jail suicide watch placement data for the period between April 1, 2018 and October 22, 2018, except for July 13 and 14. For our analysis, we excluded duplicative entries and cross-referenced this placement data with the 2P acute psychiatric unit placement data. We counted 509 suicide watch placements in which Defendant placed the person in a classroom, identified as "MPR" (or "Multi-Purpose Room") in the "Location" field. At least fifty-four (54) people remained in a classroom for three (3) days or longer. According to the data, one man was confined to a classroom for twenty-three (23) consecutive days.

8. Our office reviewed Defendant's tracking spreadsheets of all Jail Total Separation (T-Sep) placements as of October 18, 2018, with mental health tracking information. Defendant produced one spreadsheet showing T-Sep placements at the Main Jail as of October 18, 2018. A true and correct copy is attached hereto as **Exhibit D**. This document was produced by Defendant in discovery in this matter. The spreadsheet has been redacted to omit confidential, personally-identifiable information.

9. Defendants produced another spreadsheet with all the T-Sep placements at Rio Cosumnes Correction Center as of October 18, 2018. A true and correct copy is attached hereto as **Exhibit E**. This document was produced by Defendant in discovery in this matter. The spreadsheet has been redacted to omit confidential, personally-identifiable information.

10. Together, Exhibits D and E show that 133 people were designated as T-Sep as of October 18, 2018. Of those 133 people designated as "T-Sep," 116 people (87.2% of the T-Sep population) were on the mental health caseload. One hundred and two (102) people (76.7% of the T-Sep population) were assigned to FOSS levels I, II, or III, which indicate that the person has a serious mental illness and/or requires ongoing follow-up by mental health staff.

11. According to the data in the tracking spreadsheets described above (Exhibits D and E), among the Jail population on T-Sep status as of October 18, 2018, six (6) people were at FOSS level I (*i.e.*, meeting criteria for an involuntary psychiatric hold under California Welfare and Institutions Code § 5150), and thirty-one (31) people were at FOSS level II (*i.e.*, diagnosed with serious mental illness requiring frequent follow-up).

12. According to the data in the tracking spreadsheets described above (Exhibits D and E), eight (8) people with a T-Sep status as of October 18, 2018 were awaiting transfer to the Department of State Hospital.

13. Our office reviewed Defendant's tracking spreadsheet of the Jail's acute psychiatric (2P) unit admissions for the period of July 15, 2018 to October 19, 2018 (*see* Exhibit A and Paragraph 2, above), for the purpose of calculating the number of acute psychiatric unit admissions coming from the Jail's segregation units as compared to the Jail's general population units. To calculate instances where segregation housing placements preceded acute psychiatric unit referrals and admissions, we counted the number of people in known designated T-Sep and disciplinary segregation housing units (*i.e.*, "8E" and "8W" units, "7W300" and "7W400" units, and the "RAM" (Ramona) unit). Of the 129 acute psychiatric unit admissions, at least forty-three (43) people were housed in these designated segregation units immediately prior to acute psychiatric unit placement. (Given that many people referred for acute psychiatric placement are held in suicide watch cells while awaiting admission, and the spreadsheet reflects only the housing location immediately preceding acute psychiatric unit admission, the actual number of people referred for acute psychiatric care from the segregation units is likely higher.)

14. According to the Sacramento County Sheriff's Department, there were approximately 3,746 people held in the Jail's two facilities, including 154 people held in T-Sep and Disciplinary Detention housing, as of October 2018. Joint Stip. of Facts in Supp. of Joint Mot. for Class Certification ¶¶ 1, 8, ECF 28-1.

15. Given the data set forth above, roughly 4% of people housed at the Jail are held in T-Sep and disciplinary segregation units at a given time, yet at least 33% of acute psychiatric admissions come from those segregation units. In other words, T-Sep and disciplinary

segregation housing is associated with a more than *eight-fold increase* in the likelihood of decompensating to the point of requiring acute psychiatric care.

16. Attached hereto as **Exhibit F** is a true and correct copy of a memorandum from the Sacramento County Sheriff's Department to the Sacramento County Board of Supervisors. The memorandum is entitled, "Actions Necessary To Implement A 20-Bed Intensive Outpatient Unit At The Sacramento County Main Jail." The memorandum is available on the County of Sacramento web site for the March 8, 2017 Board of Supervisors meeting agenda (Item #8: "Actions Necessary To Implement A 20-Bed Intensive Outpatient Unit At The Sacramento County Main Jail," Supporting Material: "BDL Intensive Outpatient Program.doc"): http://www.agendanet.saccounty.net/sirepub/mtgviewer.aspx?meetid=11997&doctype=AGENDA (last visited Feb. 11, 2019).

17. Attached hereto as **Exhibit G** is a true and correct copy of the Sacramento County Grand Jury's Final Report for 2014-2015. The Report is available at the Sacramento County Grand Jury website: http://www.sacgrandjury.org/reports/14-15/2014-2015-Report-CF1.pdf (last visited Feb. 11, 2019).

18. Attached hereto as **Exhibit H** is a true and correct copy of Jail Psychiatric Services' Policy No. 700, from the JPS Policy and Procedures Manual, titled "Acute Inpatient Unit Admission Policy." The document was produced by Defendant in response to a Public Records Act request before this litigation was filed.

19. Attached hereto as **Exhibit I** is a true and correct copy of the Sacramento County Sheriff's Department's Operations Order No. 4/05, titled "Use of Safety Cells / Segregation Cells / Multipurpose Rooms / North Holding #2." The document was produced by Defendant in response to a Public Records Act request before this litigation was filed.

20. Attached hereto as **Exhibit J** is a true and correct copy of the Sacramento County Sheriff's Department's Operations Order No. 6/10, titled "Recreation, Exercise, and Showering." The document was produced by Defendant in response to a Public Records Act request before this litigation was filed.

21. Attached hereto as **Exhibit K** is a true and correct copy of a staffing proposal developed by Jail Psychiatric Services for the Sacramento County Jail. The document was produced by Defendant in discovery in this matter.

22. Attached hereto as **Exhibit L** is a true and correct copy of an email, dated November 28, 2018, from Defendant's counsel listing the County's criteria for placement on "Total Separation" status (i.e., "Current TSEP Criteria/TSEP Overrides"). The email was sent in response to Plaintiffs' discovery request.

23. On November 29, 2018, Plaintiffs' counsel noticed the deposition of Sacramento County under Fed. R. Civ. P. 30(b)(6), which required Defendant to produce a person most knowledgeable for testimony regarding the programs, policies, procedures, and practices relating to the provision of mental health care to individuals incarcerated in Sacramento County Jail facilities. Defendant designated Jail Psychiatric Services Program Director Andrea Javist to provide testimony on behalf of the County. Attached as **Exhibit M** are true and correct copies of relevant excerpts of Ms. Javist's deposition, which was conducted on December 6, 2018.

24. On October 25, 2018, Plaintiffs' counsel noticed the deposition of Sacramento County Sheriff's Department Chief Deputy Jennifer Freeworth under Fed. R. Civ. P. 30. Attached as **Exhibit N** are true and correct copies of relevant excerpts of Ms. Freeworth's deposition, which was conducted on November 8, 2018.

25. Attached hereto as **Exhibit O** is a true and correct copy of photographs of "Multi-Purpose Room" at the Sacramento County Main Jail, which the Jail uses to hold people who require suicide precautions and/or have acute psychiatric treatment needs. These photographs were taken during a facility tour conducted by Disability Rights California on July 15, 2016.

26. Attached hereto as **Exhibit P** is a true and correct copy of photograph of a "safety cell" at the Sacramento County Main Jail, which the Jail uses to hold people who require suicide precautions and/or have acute psychiatric treatment needs. The grate in the floor serves as the toilet for any person held in this room. The photograph was taken during a facility tour conducted by Disability Rights California on July 15, 2016.

27. Attached hereto as **Exhibit Q** is a true and correct copy of photograph of a Total Separation housing unit at the Sacramento County Main Jail. The photograph was taken during a facility tour conducted by Disability Rights California on July 15, 2016.

28. Attached hereto as **Exhibit R** is a true and correct copy of photograph from a women's solitary confinement cell at the Sacramento County Jail's Rio Cosumnes Correctional Center. The photograph was taken during a facility tour conducted by Disability Rights California on July 7, 2016.

I declare under penalty of perjury that the forgoing is true and correct. Executed this 12th day of February, 2019 in Oakland, California.

Dated: February 12, 2019            */s/ Aaron J. Fischer*
                                    Aaron J. Fischer