Aaron J. Fischer (SBN 247391)
  Aaron.Fischer@disabilityrightsca.org
Anne Hadreas (SBN 253377)
  anne.hadreas@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
1330 Broadway, Suite 500
Oakland, CA 94612
Telephone: (510) 267-1200
Fax: (510) 267-1201

Donald Specter (SBN 83925)
  dspecter@prisonlaw.com
Margot Mendelson (SBN 268583)
  mmendelson@prisonlaw.com
Sophie Hart (SBN 321663)
  sophieh@prisonlaw.coom
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Fax: (510) 280-2704

*Attorneys for Plaintiffs*

Jessica Valenzuela Santamaria (SBN 220934)
  jvs@cooley.com
Mark A. Zambarda (SBN 314808)
  mzambarda@cooley.com
Addison M. Litton (SBN 305374)
  alitton@cooley.com
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| LORENZO MAYS, RICKY RICHARDSON, JENNIFER BOTHUN, ARMANI LEE, LEERTESE BEIRGE, and CODY GARLAND, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SACRAMENTO,<br><br>Defendant. | Case No. 2:18-cv-02081 TLN KJN<br><br>**CLASS ACTION**<br><br>**JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: December 6, 2019<br>Time: 11:00 a.m.<br>Judge: Hon. Kendall J. Newman |

## INTRODUCTION

In June 2019, after engaging in extensive settlement negotiations, the parties entered into a Consent Decree to settle class claims for injunctive relief in this suit concerning conditions in the Sacramento County Jails ("Jails").  The Court granted preliminary approval of the Consent Decree on August 13, 2019.  Doc. No. 88.  Plaintiffs and Defendant, by and through their counsel, now respond to class member comments about the settlement and request final approval of the Consent Decree.  If the Court grants final approval, the Consent Decree will resolve all class claims in the case.

The Court should grant final approval of the Consent Decree because, as the Court has already ruled, "the proposed settlement is the product of arms-length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation."  Order Granting Prelim. Approval of Consent Decree and Class Notice at 2, Doc. No. 88.  Further, the Consent Decree adequately addresses the class claims for injunctive relief.  It includes a detailed 62-page Remedial Plan addressing medical and mental health care, suicide prevention, disability accommodations, restrictive housing, and mental health input into the Jails' disciplinary and use of force practices.  *See* Consent Decree, Doc. No. 85, Ex. 1. The Remedial Plan requires Defendant to remedy the deficiencies alleged in the class action complaint.  *See* Complaint, Doc. No. 1.

The Court has received four letters commenting on the proposed settlement.  The comments support the need to settle this case and provide timely relief to address the conditions of confinement in Defendant's Jails.  None of these comments show that the Consent Decree is not the product of good-faith negotiations conducted at arm's length.

There is also no evidence that the Consent Decree will fail to achieve the primary objectives of the class claims for injunctive relief — constitutionally adequate medical and mental health care, adequate measures for suicide prevention, provision of access and reasonable accommodations for people with disabilities, limits to the use of solitary confinement, and expanded mental health input into the Jails' disciplinary and use of force practices.  Moreover, Plaintiffs' counsel will vigorously

enforce the terms of the Consent Decree.  The Court should therefore grant final approval of the settlement.

## BACKGROUND

As explained in the Motion for Preliminary Approval of Consent Decree, Plaintiffs are people who are or have been incarcerated in the Sacramento County Jails representing a class of "[a]ll people who are now, or in the future will be, incarcerated in the Sacramento County jails" and a subclass of "[a]ll qualified individuals with disabilities, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), who are, or will be in the future, incarcerated in the Sacramento County jails."  Order Certifying Action as Class Action, filed December 28, 2018, Doc. No. 49, at 2.  Defendant is the County of Sacramento, which is responsible for the operation of the Jails.

In 2015, Disability Rights California (DRC), the protection and advocacy system for the State of California charged under federal and state law to protect the rights of people with disabilities, issued a public report on conditions in Jails regarding findings of policies, practices, and conditions that harm people incarcerated in the Jails, in particular those with serious mental illness, medical conditions, and physical, sensory, and mental health disabilities.  The Prison Law Office (PLO), serving as DRC's authorized agent, participated in the investigation.

In January 2016, DRC, PLO, and the County of Sacramento entered into a Structured Negotiations Agreement as an alternative to imminent litigation.  The parties agreed to utilize joint neutral experts to inspect the Jails and issue reports and recommendations.  The five experts were: Bruce Gage, M.D. (mental health care), Lindsay M. Hayes, M.S. (suicide prevention), Eldon Vail (custody and solitary confinement), Sabot Consulting (disability discrimination), and James Austin, Ph.D. (classification).  Plaintiffs' counsel, with the assistance of a correctional medical care expert, inspected the facilities and reviewed documents related to medical care, which formed the basis of the medical care component of the remedial plan.

This action was filed on July 31, 2018.  Doc. No. 1.  The complaint alleged that conditions in the Jails violated the constitutional rights of people in the jail, under the Eighth and Fourteenth

Amendments to the United States Constitution.  Specifically, Plaintiffs alleged that the County does not provide people in the jails with access to adequate medical or mental health care; imposes the harmful and excessive use of solitary confinement; fails to implement adequate or appropriate measures to prevent suicide; fails to adequately account for people's mental health needs and disabilities in the disciplinary process and when using force; and discriminates against people with disabilities in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

On October 2, 2018, Defendant filed its answer to the complaint, denying the material allegations and asserting affirmative defenses.  Doc. No. 24.  The parties filed a Joint Motion for Class Certification (Doc. No. 28), which was granted on December 28, 2018 (Doc. No. 49).

The parties then engaged in limited discovery.  On February 12, 2019, Plaintiffs filed a motion for Partial Summary Judgment or in the Alternative Preliminary Injunction regarding access to mental health care and the use of solitary confinement in the Jails.  Doc. No. 62.  While the motion was pending, the parties continued to negotiate the terms of a proposed Consent Decree, which incorporates the Remedial Plan.  The Board of Supervisors approved the Consent Decree on June 4, 2019.   Plaintiffs subsequently withdrew their motion.  Doc. No. 82.

On August 13, 2019, the Court granted the parties' joint motion seeking preliminary approval of the Consent Decree and found that "the proposed settlement is the product of arms-length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation."  Order Granting Prelim. Approval of Consent Decree and Class Notice at 2, Doc. No. 88.  The Court directed Defendant "to post the Notice in English and Spanish in all housing units in such a manner as to make the notice visible to all people incarcerated in the Jails."  *Id.* at 2.  The Court set a hearing regarding final approval of the Consent Decree for December 5, 2019, *id.* at 3, and later continued the hearing to December 6, 2019.  Doc No. 101.

On September 6, 2019, Lieutenant Alex McCamy filed a declaration affirming the Defendant's compliance with the Court's August 13, 2019 order.  *See* Doc. No. 91.  The Class Notice described the key terms of the settlement and the proposed agreement regarding attorneys'

fees and advised class members that the Court would consider written comments when deciding whether to approve the settlement. *See* Doc. No. 90, Ex. A. Defendant also established a process to provide copies of the full Consent Decree, the Remedial Plan, and Plaintiffs' Unopposed Motion for Attorneys' Fees and Expenses to people in the jail who requested them.

To date, four letters have been filed with the Court. *See* Doc. Nos. 96-98, 100. One is from a non-class member. Doc. No. 100. Each letter is addressed below.

## SUMMARY OF KEY PROPOSED SETTLEMENT TERMS

The following are some of the key terms of the Consent Decree:

1.      Utilizing the reports of the joint experts, the subject matter knowledge of class counsel and Jail services leadership, and the extensive information and input gathered by class counsel from class members, the parties have agreed on a detailed Remedial Plan that Defendant will be required to implement. The Remedial Plan provisions cover all the substantive areas in dispute: medical care, mental health care, suicide prevention, the use of solitary confinement, discrimination against people with disabilities, and mental health input into disciplinary and use of force practices. The Remedial Plan is attached to the Consent Decree as Exhibit A. Doc. No. 85-1. Among many other provisions, the Remedial Plan requires the County to: (a) expand its programs and services to meet the treatment needs of people with mental health needs, (b) provide constitutionally adequate medical care, (c) implement appropriate suicide prevention policies and procedures, (d) identify people with disabilities and ensure that they receive reasonable accommodations and can access programs and services in the Jails, (e) limit the use and duration of solitary confinement, including by curbing the placement of people with serious mental illness in solitary confinement; and (f) expand mental health input into the Jails' disciplinary and use of force practices.

2.      The parties have implemented a process, set forth in the Consent Decree, to select joint neutral experts, to be appointed by the court to monitor implementation of and compliance with the Remedial Plan and to assist in dispute resolution. The experts will complete comprehensive reviews of Defendant's progress and will have reasonable access to all parts of the Jails, including confidential, voluntary interviews with any staff and class members, and documents on request.

3.     Prison Law Office and Disability Rights California, as Plaintiffs' counsel, also will monitor compliance with the Consent Decree and the Remedial Plan.  Plaintiffs' counsel will be able to inspect the Jails up to three times per year and have reasonable access to relevant information, including documents as well as interviews with staff and class members.

4.     In the event of a dispute, the parties have agreed on a dispute resolution process, including involvement of the experts and a mediator as appropriate.  The Court will retain jurisdiction to address motions to enforce compliance should the dispute resolution process fail.

5.     The County has agreed to pay Plaintiffs' counsel $2,100,000 for merits fees and expenses and $250,000 per year for monitoring fees and expenses.  *See* Pls.' Notice of Motion and Unopposed Motion for Attorneys' Fees and Expenses, Doc. No. 92.

## ANALYSIS

### A.     The settlement is fair, reasonable, and adequate.

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions.  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Courts must give "proper deference to the private consensual decision of the parties."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  "[S]ettlement [is] the preferred means of dispute resolution" and that "is especially true in complex class action litigation."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

In reviewing a proposed class action settlement agreement, there is an initial presumption of fairness when a proposed class settlement was negotiated at arm's length by counsel for the class.  *Harris v. Vector Mktg. Corp.*, No. C-08–5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).  "Although Rule 23 imposes strict procedural requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure that it is 'fair, adequate, and free from collusion.'"  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citation omitted).

Other factors courts consider in assessing a proposed class settlement include: "[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further

litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026; *see also In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1179 (N.D. Cal. 1993). The district court must explore these factors comprehensively to satisfy appellate review, but "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge." *Hanlon*, 150 F.3d at 1026.

"[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (citing *Officers for Justice*, 688 F.2d at 625). Thus, a district court's decision to approve a class-action settlement may be reversed "only upon a strong showing that the district court's decision was a clear abuse of discretion." *Id.* (citation omitted).

Here, the Court already found that the settlement is "the product of arms-length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation." Order Granting Prelim. Approval of Consent Decree and Class Notice at 2, Doc. No. 88. Thus, the Consent Decree is entitled to a presumption of fairness. *Harris*, 2011 WL 1627973, at *8.

The Court should grant final approval of the Consent Decree because it provides substantial equitable relief to class members. Defendant has agreed to settlement terms that directly address the class claims in this case, including the delivery of minimally adequate medical and mental health care, implementation of adequate suicide prevention measures, reforms to the identification of and provision of reasonable accommodations and access for people with disabilities, substantial limitations to the use of solitary confinement, and expanded mental health input into the Jails' disciplinary and use of force practices. *See* Remedial Plan, Doc. No. 85-1, Ex. A. The settlement was reached after several years of negotiations between the parties, who were zealously represented by their experienced counsel throughout this litigation. *See* Decl. of Aaron Fischer in Supp. of Pls.'

1  Unopposed Mot. for Attorneys' Fees and Expenses ¶¶ 2-7, Doc. No. 93; Decl. of Donald Specter in

2  Supp. of Pls.' Unopposed Mot. for Attorneys' Fees and Expenses ¶¶ 2–5, Doc. No. 94; Decl. of

3  Jessica Valenzuela Santamaria in Supp. of Pls.' Unopposed Mot. for Attorneys' Fees and Expenses ¶

4  2, Doc. No. 95.  The settlement was also reached after neutral experts inspected Defendant's jails

5  and opined on the adequacy of medical and mental health care, classification and solitary

6  confinement practices, suicide prevention, and compliance with federal and state disability law.

7  　　　Further, the outcome of the litigation and the extent of any relief that the class might be

8  awarded if the case went to trial is uncertain.  Plaintiffs faced substantial burdens in demonstrating a

9  current and ongoing violation of individuals' constitutional rights on a system-wide basis.

10  Proceeding through pre-trial motions, trial, and probable appeal would impose risks, costs, and a

11  substantial delay in the implementation of any remedy in this matter.  Given the relief achieved and

12  the risks and costs involved in further litigation, the Consent Decree represents a fundamentally

13  "fair, reasonable, and adequate" resolution of the disputed issues and should be given final approval.

14  *See* Fed. R. Civ. Pro. 23(e)(2).

　　　**B.**　　**None of the comments refute the presumption that the settlement is fair,
　　　　　　reasonable, and adequate.**

16  　　　Four letters were submitted to the Court.  Doc. Nos. 96-98, 100.  Most letters did not provide

17  substantive comments on the terms of the Consent Decree or Remedial Plan.  Two of the letters

18  described concerns with the health care and disability accommodations in the Jails and requested

19  individual damages.  Doc. Nos. 96, 97.  One letter described concerns about the delivery of health

20  care in the Jails and requested that the Court impose fines on the Defendant to induce compliance.

21  Doc. No. 98.  The fourth letter, which came from a non-class member,[1] raised concerns about

22  solitary confinement practices and inadequate suicide prevention measures in the Jails.  Doc. No.

23  100.  The letter also objected to a provision of the Consent Decree limiting the reliance on the

24  Consent Decree in other cases or claims.  *Id.* at 4.

25  　　　None of these letters provides any basis for rejecting the settlement.  The letters that reported

26  problems with conditions at the jails underscore the need for the agreed-upon remedy in this case.  In

---

[1] The objector states that he was incarcerated in the Sacramento County Jail from September 2015 through May 2017, before the class was certified in December 2018 (*see* Doc No. 49).

JOINT MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT
CASE NO.: 2:18-cv-02081 TLN KJN

addition, the letters requesting damages to be paid to class members should not prevent approval of the settlement here: the class and disability subclass sought only declaratory and injunctive relief pursuant to Federal Rule of Civil Procedure 23(b)(2), and the settlement does not bar class members from pursuing individual damage claims. *See Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996) ("[T]he general rule is that a class action suit seeking only declaratory and injunctive relief does not bar subsequent individual damage claims by class members, even if based on the same events."). With respect to the concerns about the provision of the Consent Decree that limits its use in other claims or proceedings, nothing limits any litigant from accessing or referencing the policies and procedures adopted by the County in connection with or in response to the Consent Decree, or the evidence submitted in support of Plaintiffs' claims.

In sum, the settlement here is fair, reasonable, and adequate and this Court should approve it.

### C.   Plaintiffs' Unopposed Motion for Attorneys' Fees and Expenses Should Be Granted.

Defendant has agreed to pay Plaintiffs' attorneys' fees and out of pocket expenses in the amount of $2,100,000.  This amount — which reimburses Plaintiffs' counsel for some but not all of their actual hours spent and out-of-pocket expenses — is fair and reasonable in light of the extraordinary results obtained through this litigation, the lengthy and detailed settlement negotiations, and the difficulty and complexity of the issues involved.  There have been no objections from class members to the proposed attorneys' fees and expenses.  Accordingly, the Court should grant Plaintiffs' pending Unopposed Motion for Attorneys' Fees and Expenses, Doc. No. 92, pursuant to Federal Rule of Civil Procedures 23(h).

### CONCLUSION

As the Court has already ruled, the Consent Decree is the product of arm's length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation.  Thus, it is entitled to a presumption of fairness.  Further, the comments by class members do not demonstrate that the Consent Decree does not fairly, reasonably, and adequately resolve the class's or disability subclass's claims for injunctive relief.  Accordingly, the parties request that the Court grant final approval of the Consent Decree and

grant Plaintiffs' pending Unopposed Motion for Attorneys' Fees.  A proposed order on final

approval of the class action settlement is filed herewith.  The proposed order on Plaintiffs'

unopposed motion for attorneys' fees was previously filed.  Doc. 92-1.

Dated: November 12, 2019

*Margot Mendelson*_____
Margot K. Mendelson (SBN 268583)
PRISON LAW OFFICE
*Attorney for Plaintiffs*

Dated: November 12, 2019

*Aaron Fischer (as authorized 11/12/19)*
Aaron J. Fischer (SBN 247391)
DISABILITY RIGHTS CALIFORNIA
*Attorney for Plaintiffs*

Dated: November 12, 2019

*Jessica Valenzuela Santamaria (as authorized 11/11/19)*
Jessica Valenzuela Santamaria (SBN 220934)
COOLEY LLP
*Attorney for Plaintiffs*

Dated: November 12, 2019

*Todd Master (as authorized 11/12/19)*
Todd H. Master (SBN 185881)
HOWARD ROME MARTIN & RIDLEY
*Attorney for Defendant*