LISA A. TRAVIS, County Counsel
RICK HEYER, Supervising Deputy County Counsel
  [State Bar No. 216150]
COUNTY OF SACRAMENTO
700 H Street, Suite 2650
Sacramento, CA 95814
Telephone: (916) 874-7538
Facsimile: (916) 874-8207
E-mail: heyerr@saccounty.net
File No.: 126602-000012

Attorneys for County of Sacramento

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

| | |
|---|---|
| LORENZO MAYS, RICKY RICHARDSON, JENNIFER BOTHUN, ARMANI LEE, LEERTESE BEIRGE, and CODY GARLAND, on behalf of themselves and all others similarly situated | Case No. 2:18-cv-02081 TLN KJN |
| Plaintiffs, | COUNTY OF SACRAMENTO'S RESPONSE TO REPORT FROM SUBJECT MATTER EXPERTS REGARDING THE RESPONSE FROM THE COUNTY TO THE COVID-19 PANDEMIC IN THE COUNTY JAILS |
| vs. | |
| COUNTY OF SACRAMENTO | JUDGE: Hon. Kendall J. Newman |
| Defendant. | |

On or about October 27, 2020, Madeline LaMarre, the Court appointed medical expert, and Mary Perrien, the Court appointed mental health expert, issued their joint report detailing their finding on the County's response to mitigating the spread of COVID-19 in the County jails. The County, along with the monitors from the Prison Law Office (PLO) and Disability Rights of California (DRC), requested the experts to prepare such a report in order to ensure the County was taking the necessary and reasonable steps to address this global pandemic. The experts found that the Sacramento County Sheriff (SSO) and the Sacramento County Department of Health Services, Correctional Health Services (CHS) program have "been successful in identifying and isolating cases of COVID-19 at intake" and have not had any spread of COVID-19 to the general jail population. (LaMarre report at pg. 4.) To state this another way, the report

-1-

has found that SSO and CHS have managed to detect COVID-19 when arrestees are brought into the facilities and prevented those infected individuals from spreading the virus to the existing jail population.

Counsel from the PLO, DRC and the County, along with representatives from SSO and CHS, met and conferred on November 9, 2020 to discuss the expert reports. On November 24, 2020, Class Counsel Aaron Fischer sent to the County an email with ten (10) specific findings from the report that the PLO and DRC would like a specific response to from the County. (See Attachment 1.) The areas Mr. Fischer would like addressed and the County's response to those specifics concerns are set forth below. In addition, please find all the specific findings from the report and the County's response to those findings attached as Attachment 2.

**SPECIFIC AREAS OF CONCERN CLASS COUNSEL**

**1.**     **On pages 26 and 27, Madeline LaMarre suggested the SSO and CHS should consider expanding the initial intake screening from seven (7) days to fourteen (14).**

County Response: The Main Jail is located in downtown Sacramento and contains the central booking "loop" for the Sacramento County correctional system. The Main Jail is centrally located allowing for ease of access for the law enforcement agencies that bring new arrestees to the SSO. The other County jail, located at the Rio Consumes Correctional Center (RCCC), has only a small intake facility and is relatively remote from the population centers of the County. For these reasons, the vast majority of new intakes to the system are processed at the Main Jail.

SSO and CHS began separating and isolating new arrestees at the main jail into cohorts based on their date of arrest in response to the COVID-19 pandemic. These cohorts are then isolated in an intake quarantine housing for seven (7) full days after they go through the intake process. In many cases, this practice means most new intakes spend the bulk of eight (8) days in this intake quarantine.

All inmates in intake quarantine are tested for COVID-19 on their sixth day in isolation. Test results are normally returned within twenty-four (24) hours. If the inmate has a negative test result, the inmate is then cleared from the quarantine and placed in the facility according to the

inmate's classification. If the results do not return within twenty-four hours the inmate remains in quarantine until the test results are returned to CHS.

If an inmate in this initial quarantine has a positive test result, the inmate is placed in the COVID case isolation pod of the main jail. The inmate will remain in this pod, isolated from the general population, until the inmate tests negative for COVID-19 and is cleared by CHS for general housing.

The process described above occurs every day. Consequently, every day there are new inmates arriving that need to be housed in single cells to accommodate intake quarantine. These new intake quarantined inmates are in addition to those intake quarantined inmates that have already begun the seven-day isolation and are also in addition to the general population inmates that are quarantined because they have had a potential exposure (close contact quarantine), have shown some symptoms of COVID-19 (suspect isolation) or who have confirmed COVID-19 (COVID case isolation).

These single cells are at a premium in the Main Jail. Each inmate so housed takes one of these cells from the limited inventory of cells in the main jail. The only way that SSO can accommodate the need for these cells is to cap the duration of this quarantine to seven days. This period allows for a turnover that provides for cells for the new intakes that come in to the facility every day. Stretching the intake quarantine past these seven days would deplete the inventory of cells available for single cell isolation.

This is the reason that SSO and CHS first developed this process and time period for the intake quarantine. Experience has shown to date that the process and time period are appropriate. As Ms. LaMarre noted, the County has detected all COVID-19 positive inmates through this process and has prevented the spread of COVID-19 to the general population.

Mr. Fischer has inquired if there is a potential to increase the duration of the intake quarantine if the jail population was reduced. In theory, it is possible that some drastic reduction in the already reduced jail population might make a longer period of isolation possible. However, SSO has not been able to determine the actual number that would be necessary to accomplish

this. The County can say that the seven-day quarantine was developed in March at a time when the Main Jail population was at its lowest. Even at that point, the seven-day isolation was the time frame that worked given the limited space within the facility.

While drafting this reply to the experts' report, the Centers for Disease Control (CDC) issued new guidance for COVID-19 quarantines. (See https://www.cdc.gov/coronavirus/2019-ncov/more/scientific-brief-options-to-reduce-quarantine.html.) As of the filing of this Response, the guidance is now that 7 days in quarantine is sufficient if there is a negative test result within 48 hours of the end of the quarantine. The quarantine period used by the County is, and has been, consistent with this new guidance.

**2.     Increased access to showers for inmates in isolation/quarantine as suggested by Ms. Lamarre on pages 29, and 32-33 of her report.**

County Response:       SSO allows all inmates access to a shower prior to initiating any quarantine/isolation period. Inmates in quarantine/isolation are placed in cells with sinks and are provided soap and towels so that they may clean themselves daily.

SSO is in the process of evaluating providing showers to those on quarantine or isolation. To do so, SSO will assess the practicality and ability of the department to provide showers to these inmates between 10:00 p.m. and 6:00 a.m. Doing so in this time frame is more likely to be feasible because there are no other inmates in common areas. In addition, there are fewer needs for other inmates to be moved or transported during these off hours. These facts mean that there is less risk or exposure to general population inmates and there are more deputies available to move the isolated inmate to and from the shower. SSO will provide an update to class counsel within thirty days from the filing of this document on the feasibility and parameters of this process.

**3.     Access to phones for inmates in quarantine with appropriate cleaning between use as suggested by Ms. LaMarre on pages 21 and 32-33 of the report.**

County Response:       All inmates are provided an opportunity to make a phone call(s) prior to entering quarantine/isolation. Once the inmate has entered quarantine/isolation, the provision of

-4-

phone calls poses an unacceptable risk of infection to the general inmate population. This risk is high because the phones available to inmates are in common areas. The only way to allow access in a safe manner would be to lock general population inmates in their cells and allow inmates on quarantine/isolation access to the phone one at a time. After each phone call, staff would need to sanitize the area. This process would need to be repeated every time any isolated inmate was allowed access to the phones. SSO does not have the staffing available to handle such a process.

**4.     Providing Medical and Mental Health checks to inmates in isolation/quarantine as set forth on pages 28 and 31 of the LaMarre portion of the report and pages 22-23 of the Perrien portion.**

County Response: Medical staff perform daily health checks on inmates in the COVID-19 quarantine housing and twice daily checks on inmates housed in the COVID Suspect and Isolation housing. In addition to the health check, they also see if inmates need other services. Medical staff make referrals to mental health staff when indicated.

**5.     Social distancing in intake area and holding cells noted on pages 24 and 25 of the LaMarre portion of the report.**

County Response:      SSO understands the need for social distancing and tries to ensure that such distancing is practiced whenever possible. However, the ability to meet social distancing guidelines issued by the CDC and the State and County Public Health Officers is limited by the physical plant of the jails. For instance, the holding cells located in the Sacramento County Courthouses are small and do not allow for all inmates assigned to a certain courtroom on any given day to be in the cell and separated by six feet. To address this, SSO has limited the number of inmates allowed in a cell at any one time. SSO is in the process of adding signage in the holding cells to notify the inmates held therein to maintain social distance in order to mitigate the spread of COVID-19.

///

///

///

///

COUNTY'S RESPONSE TO REPORT FROM SUBJECT MATTER EXPERTS

**6.  Providing Confidentiality for Medical and Mental Health Encounters as set forth on page 28 of the LaMarre portion and pages 11 through 13 and 24 of the Perrien portion of the report.**

County Response: On October 28, 2020, mental health staff received training re-asserting the need for confidentiality, and staff were provided education on using unused space like empty classrooms and attorney visitation booths to provide a confidential clinical encounter.

**7.  Providing mental health programing to inmates housed in mental health treatment units as suggested on pages 22 and 26 of the Perrien report.**

County Response: Mental health staff is reviewing the current staffing levels in an effort to determine its ability to meet this recommendation.

**8.  Providing soap and hand sanitizer to inmates as suggested on pages 22 and 25 of the LaMarre portion of the report and page 25 of the Perrien portion.**

County Response:        All inmates are provided soap that they may keep in their cell. When inmates are in the common areas such as day rooms, their cell doors are left open so that they may have access to the soap and sink in their cell.

SSO is in the process of procuring and placing hand sanitizer in the booking loop so that inmates and arrestees in that portion of the jail that do not have access to soap and water may sanitize their hands.

SSO continues to maintain that providing hand sanitizer in other parts of the jail is unnecessary because all inmates in these portions of the jail have access to soap and water. SSO also finds that providing hand sanitizer in these settings is a security risk as inmates may use the liquid to create chemical weapons or use it to make alcoholic beverages.

**9.  Provision of tablets to inmates in isolation/quarantine as suggested by Dr. Perrien on pages 32-33 of her report.**

County Response:        All inmates on quarantine/isolation are provided access to a tablet. These tablets are sanitized between uses.

///

///

-6-

COUNTY'S RESPONSE TO REPORT FROM SUBJECT MATTER EXPERTS

1    **10.**    **Provision of flu vaccination to inmate population as suggested by Ms. Lamarre on**
2            **page 18 of her report.**

3    <u>County Response:</u>      The County initiated flu vaccination clinics in October at the Main Jail and

4    RCCC. These clinics are ongoing and allow for inmates to receive the vaccination.

5    DATED:     <u>December 8, 2020</u>       LISA A. TRAVIS, County Counsel
6                                             Sacramento County, California

7
8                                    By: _____
                                         Rick Heyer
9                                          Supervising Deputy County Counsel

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COUNTY'S RESPONSE TO REPORT FROM SUBJECT MATTER EXPERTS

ATTACHMENT 1

**Heyer. Rick**

| | |
|---|---|
| **From:** | Aaron Fischer <Aaron.Fischer@disabilityrightsca.org> |
| **Sent:** | Tuesday, November 24, 2020 17:21 |
| **To:** | Heyer. Rick |
| **Cc:** | Margot Mendelson; Lindsay M. Hayes; Madeleine LaMarre; Mary Perrien (mperrien@aol.com); Anne Hadreas; Patrick Booth |
| **Subject:** | RE: Sacramento County Jail COVID 19 Report |

**EXTERNAL EMAIL:** If unknown sender, do not click links/attachments.

Rick,

We appreciated the opportunity to speak with you as well as custody, medical, mental health, and nursing representatives on November 9 regarding the findings and recommendations contained in the LaMarre and Perrien expert reports on COVID-19 policies and practices. Each of their recommendations warrant serious consideration and deliberate action.

As you requested, we identify aspects of the reports that Class Counsel demand meaningful remedial action and a detailed response in the County's forthcoming status report to the court (per Dkt. 129, due December 8, 2020).

1. **Expansion of Intake Quarantine period to 14 days (LaMarre at 26-27)**
   If 14 days is not possible given current intake and other population pressures, we request that this be so stated. Given physical plant and operational constraints, what sort of reduction in intake or jail population would be required to allow for a 14-day intake quarantine? For a 12-day intake quarantine? For a 10-day intake quarantine?

2. **Provision of Showers in Quarantine/Isolation (LaMarre at 29, 32-33)**
   As discussed, some increase in access to showers in these units is essential. Title 15 requirements remain applicable. For purposes of the *Mays* case, Class Counsel is willing to consider an alternative arrangement that increases access to showers in a way that balances health and regulatory requirements with staffing and operational considerations.

3. **Access to phones in Quarantine/Isolation, with appropriate disinfection between uses (LaMarre at 21, 32-33)**
   As discussed, an increase in access to the phones in these units is essential. Class counsel have received reports in which the denial of phones has compromised individuals' due process rights (including ability to bail out) and adversely impacted mental health. Class members must have some access to phones during business hours during quarantine and isolation periods.

4. **Medical and Mental Health checks in Quarantine/Isolation (LaMarre at 28, 31; Perrien at 22-23)**
   As discussed, Mental Health checks must be provided, per Dr. Perrien. Class counsel is amenable to an arrangement in which ACH staff provides mental health monitoring as part of medical checks, with appropriate guidance and coordination from JPS.

5. **Social distancing in intake area/holding cells (LaMarre at 24-25)**
   As discussed, please provide all policies governing social distancing among class members, including in housing areas, dayroom and recreational spaces, intake areas, holding cells (in the jails and courtrooms), and transport vehicles. What constraints prevent the Department from implementing greater social distancing? Given physical plant and operational constraints, what sort of reduction in intake or jail population would be required to allow for adequate, or even improved, social distancing practices?

6. **Provision of Confidentiality for Medical and Mental Health Encounters (LaMarre at 28; Perrien at 11-13, 24)**

7. **Provision of adequate mental health treatment programming, especially in IOP and 2P (Perrien at 22, 26)**

8. **Provision of adequate soap and sanitizer (LaMarre at 22, 25; Perrien at 25)**
9. **Provision of TVs, tablets in Quarantine/Isolation (LaMarre at 32-33)**
10. **Provision of flu vaccination, in long-term population and ongoing at intake (LaMarre at 18)**

Best,
Aaron

---

**From:** Heyer. Rick <heyerr@saccounty.net>
**Sent:** Tuesday, October 27, 2020 10:34 AM
**To:** Aaron Fischer <Aaron.Fischer@disabilityrightsca.org>; Madeleine LaMarre <mlamarre55@gmail.com>; Mary Perrien (mperrien@aol.com) <mperrien@aol.com>
**Cc:** Margot Mendelson <mmendelson@prisonlaw.com>; Lindsay M. Hayes <lhayesta@msn.com>
**Subject:** RE: Sacramento County Jail COVID 19 Report

Thank you Aaron

---

**From:** Aaron Fischer <Aaron.Fischer@disabilityrightsca.org>
**Sent:** Tuesday, October 27, 2020 10:31
**To:** Madeleine LaMarre <mlamarre55@gmail.com>; Mary Perrien (mperrien@aol.com) <mperrien@aol.com>
**Cc:** Margot Mendelson <mmendelson@prisonlaw.com>; Lindsay M. Hayes <lhayesta@msn.com>; Heyer. Rick <heyerr@saccounty.net>
**Subject:** RE: Sacramento County Jail COVID 19 Report

**EXTERNAL EMAIL:** If unknown sender, do not click links/attachments.

Madie and Mary:

Your reports have been filed with the court. Court-stamped pleadings attached, for your records.

Many thanks for all of your time and efforts. We will be in touch.

-Aaron

---

**From:** Madeleine LaMarre <mlamarre55@gmail.com>
**Sent:** Monday, October 26, 2020 6:36 PM
**To:** Heyer. Rick <heyerr@saccounty.net>; Margot Mendelson <mmendelson@prisonlaw.com>; Aaron Fischer <Aaron.Fischer@disabilityrightsca.org>; Anne Hadreas <Anne.Hadreas@disabilityrightsca.org>
**Cc:** Mary Perrien (mperrien@aol.com) <mperrien@aol.com>; Lindsay M. Hayes <lhayesta@msn.com>; Madeleine LaMarre <mlamarre55@gmail.com>
**Subject:** Sacramento County Jail COVID 19 Report

Dear Rick, Margot, Aaron and Anne,

Please see my attached COVID 19 report.  I carefully considered the comments and additional information provided to me in finalizing my report.
Please let me know if you have any questions.
Regards,
Madie

2

--
Madeleine LaMarre MN, FNP-BC
1143 Citadel Drive NE
Atlanta GA 30324-3815

(404) 694-0655 (mobile)

**The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Any inadvertent disclosure does not waive the attorney-client privilege. Thank you**

**The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Any inadvertent disclosure does not waive the attorney-client privilege. Thank you**

ATTACHMENT 2

County COVID-19 Practices in Correctional System
Response to Medical SME Monitor Report
December 4, 2020

| | |
|---|---|
| 10/27/20 | SME Report Filed with Court |
| 10/28/20 | Received & distributed. |
| 11/09/20 | Meet & Confer with counsel |
| 11/16/20 | Finalized COVID-19 Staff Guidance Revision and COVID-19 Population Housing Quick Guide. |
| 11/16/20 | Sent documents to Counsel and SSO. |
| 12/08/20 | Court Filing (no later than 12/8) including response and plans for remedial action including new or revised policies, procedures, or, directives. |
| *Note:  Adult Correctional Heath (ACH) and Sacramento Sheriff's Office (SSO) regularly meet to discuss and work on COVID-19 strategies and response.* | |

| Page | Medical SME Monitor Recommendations | Staff | CHS Response |
|---|---|---|---|
| 15 | 1. Continue to revise Correctional Health Services (CHS) Guidance as new information becomes available or procedures are changed. | CHS | 1. Per prior conversations and documents, SME Monitor is aware CHS has an established practice of revising the staff guidance.  Initial COVID-19 Staff Guidance was published 3/2/20 (prior to the publication of guidance for correctional facilities) and there have been 13 revisions after its release.<br><br>For this document, when there are references to the Staff Guidance, it is the Adult Correctional Health COVID-19 Staff Guidance created 10/22/20.  An update was published (11/16/20) which includes new changes as noted. |
| | 2. Sacramento Sheriff's Office (SSO) should develop policies and post orders that address custody procedures related to prevention & management of COVID-19. | SSO | SSO is in the process of creating a Staff Guidance document that will address this area of the report. It will be a similar to the one CHS publishes. Like CHS's document, it will be updated periodically as things change or new issues come up. |
| | 3. Document staff training via Zoom and other technologies, with pre- and post- testing to assess staff knowledge. | BOTH | CHS has not always been consistent with maintaining documentation of staff training but are working on improvement.  Staff complete a competency skills checklist on nasopharyngeal swabbing (COVID-19 Tests), donning and doffing.<br>SSO – SSO employees completed the mandatory COVID-19 Return to Work Training in June 2020. This training was offered through the County of Sacramento. ECHS person had to sign an attestation form. All new employees are required to complete this training when they start. |

County COVID-19 Practices in Correctional System
Response to Medical SME Monitor Report
December 4, 2020

| Page | Medical SME Monitor Recommendations | Staff | CHS Response |
|---|---|---|---|
| | | | A new SSO Staff Guidance document is being created. It will be posted on our portal and emailed out to CHS employee any time it is revised.<br><br>Additional ways to train and document this training are being explored (Possibly through virtual briefings).<br>Due to logistics, as well as the size of our division, it is unlikely  we will have a pre or post testing process. |
| | 4.   Consider centralizing staff inquiries regarding policy questions (Infection Prevention Coordinator). | BOTH | Page 19 on the Staff Guidance, Infection Prevention Coordinator item 5, states this person is the primary liaison for Public Health, SSO, Hospitals, etc.  The Infection Prevention Coordinator will also serve as the point of contact for staff policy questions.  This was added to the 11/16/20 Staff Guidance.<br>SSO - Both the Main Jail and RCCC have Compliance Units. These units are supervised by a sergeant and led by a lieutenant. ECHS lieutenant and their respective teams work closely with the Infection Prevention Coordinator. |
| 16 | 1.   Implement & document staff training regarding revised CHS Guidance for CHS & SSO Staff.<br>2.   SSO should develop comprehensive policies and procedures and post orders regarding COVID-19 activities.<br>3.   Establish clear guidance for structuring & enforcing – staff, detainees, visitors. | BOTH<br><br>SSO<br><br><br>BOTH | 1.   Training is addressed in the Staff Guidance on page 1.  New staff are trained on the entire guidance.  Existing staff are trained as needed on changes within CHS guidance.<br>SSO – New staff are trained on the entire guidance.  Existing staff are trained as needed on changes within CHS guidance. The document is emailed out to CHS employee as it is revised and it is posted on our RCCC portal where it is easily accessible.<br>2.   SSO - This will be addressed in the SSO Staff Guidance document.<br>3.   Infection Prevention Coordinator Job Duties document was shared with Medical SME.  It lists surveillance activities.  This is also noted in the Staff Guidance, page 20, item 7.  Surveilling key activities and providing feedback.<br>SSO – We are exploring ways we can accomplish this. Once this is identified, we will add it to our Staff Guidance document. |
| 16 | 1.   Continue to seek legally acceptable alternatives to in person court appearances, such as virtual court, but explore strategies to maintain social distancing. | SSO | The volume of inmates for in-custody hearings has declined significantly during COVID-19 with the Zero bail implementation. Our current social distancing procedures have been effective, but the courts have complained that because of these procedures, time efficiency has gone down. With the |

County COVID-19 Practices in Correctional System
Response to Medical SME Monitor Report
December 4, 2020

| Page | Medical SME Monitor Recommendations | Staff | CHS Response |
|------|--------------------------------------|-------|--------------|
| | | | high number of court rooms requesting inmates at any given time, Zoom attendance by inmates will not work. |
| 17 | 1. Consider conducting surveys among CHS staff and detainees regarding barriers to COVID-19 prevention measures.<br>2. In addition to CDC videos, consider utilizing COVID-19 videos for staff and detainees such as those produced by Brie Williams MD and her colleagues at UCSF. | BOTH | 1. CHS will not be completing surveys.  There is not sufficient bandwidth for this activity.<br>SSO - RCCC and MJ conducted COVID surveys with staff. We will explore options with surveying inmates.<br>2. Will consider.<br>SSO - COVID videos have been shared previously with staff and inmates. We are looking at appropriate new content to share. |
| 17 | 1. CHS has established an Infection Prevention Coordinator position to coordinate COVID-19 and other related infection prevention activities.  This position should review CDC guidance and alert CHS/SSO of CDC recommendations that have not been fully addressed or implemented.<br>2. Establish a centralized system for monitoring employees who have COVID-19 cases, suspects, or close contacts to ensure they comply with criteria. | CHS<br><br><br>BOTH | These items were addressed with SME Monitor and were noted in documents.<br>1. This is noted in the Staff Guidance, page 20, item #6.  Was also noted in the job duties statement reviewed with Medical SME.<br>2. This is noted in the Staff Guidance, page 19, item 3 under Infection Prevention Coordinator.  It was also noted in the job duties statement reviewed with Medical SME.<br>SSO - This is in place. Both facilities have Compliance Units. These units are supervised by a sergeant and led by a lieutenant. They both work closely with CHS and the Infection Prevention Coordinator. |
| 18 | 1. Influenza Vaccination should be offered to all existing and newly arriving detainees and all staff who work at the jail.  Coordinate with Public Health to expedite influenza vaccination for staff and detainees. | CHS | 1. As discussed with SME, CHS is offering the flu vaccine to all existing and newly arriving detainees and stated that flu clinics began October 19.  Staff were authorized to increase temporary staffing for COVID-19 work and flu clinics.  Some staff are pending background clearance.  Public Health is also using temporary staffing from registries to assist with their community flu clinics which are in process. |
| 19 | 1. Ensure that CHS Guidance & Disaster Plan policies and procedures include routine and emergent response procedures for obtaining PPE.<br>2. Establish Donning & Doffing stations for personnel using PPE.<br>3. Monitor staff & inmate access to soap and ensure a free supply of soap to detainees. | CHS<br><br><br>CHS<br><br>SSO | This was discussed with SME Monitor and is noted in guidance.<br>1. Ordering PPE is noted in Staff Guidance on pages 5-6. Stated to SME Monitor that routine ordering is completed through vendors and also through the Medical & Health Operational Area Coordinator (MHOAC). The latter operates during emergencies.  This was clarified as "routine" and "emergent" in the 11/16/20 Staff Guidance. |

County COVID-19 Practices in Correctional System
Response to Medical SME Monitor Report
December 4, 2020

| Page | Medical SME Monitor Recommendations | Staff | CHS Response |
|---|---|---|---|
|  | 4. Consider making hand sanitizer available to detainees under deputy supervision such as during transport in vehicles or work assignments when access to soap and water is not readily available. | SSO | 2. During discussions with Medical SME and in written feedback (09/28/20), explained CHS is unable to have separate donning and doffing rooms due to physical plant limitations.<br>3. SSO – All of the inmates at RCCC and MJ are given their own soap. Every facility receives supply orders once a week. If supplies of soap run low, additional soap can be obtained from the Warehouse. ECHS houseman in the pod or barracks have additional bars of soap that are available to every inmate. If they cannot obtain a bar from the houseman, they should ask an officer and he/she will obtain more. Inmates have constant access to their cells during dayroom to wash their hands with their own soap.<br>4. We are in the process of evaluating where they are needed and what the cost will be. This is something that will be addressed soon. We are looking into placing soap and sanitizer dispensers in supervised areas. |
| 20 | 1. When an inmate displays COVID symptoms, health care staff should remove inmate to COVID-19 suspect isolation and the cellmate should be removed from the room immediately and placed in close contact quarantine.<br>2. CHS and SSO leadership should assess operations with respect to staff assignments and seek to restrict staff from working from high to low risk areas whenever possible, and to always adhere to wearing proper PPE based upon the nature of the work assignment.<br>3. Continue cohort detainees in small groups for arraignment and other court hearings.<br>4. SSO should monitor and enforce mask wearing. | CHS<br><br><br><br><br>BOTH<br><br><br><br><br><br><br>SSO<br><br>SSO | 1. This is in the Staff Guidance under Intake Screening, page 6, but will add it in another section.  However, this is a routine standard of practice.<br>2. This item was reviewed and staff responded to Medical SME on 9/28/20 that this would be ideal.  Will work from low risk to high risk in the COVID Suspect Isolation and COVID Confirmed Housing Population areas.  Due to high volume/churn of the quarantine housing population, will not be able to work low to high risk.<br>SSO - Generally, our staff are assigned to the same facilities. There are times when changes have to be made due to staffing issues (Vacation/sick leave). We do our best keep officers working in the same area since they are familiar with the inmates housed there and they have established relationships. Our staff who have voiced health concerns over a specific work area have been and will continue to be accommodated.<br>3. SSO – We will continue to do this.<br>4. SSO - Each inmate is given a mask upon intake and has the opportunity to exchange it 2x per week. It is directed that the mask is worn any time out of their cell. Unfortunately, many inmates choose not to |

4

County COVID-19 Practices in Correctional System
Response to Medical SME Monitor Report
December 4, 2020

| Page | Medical SME Monitor Recommendations | Staff | CHS Response |
|---|---|---|---|
| | | | comply with this directive and barring the implementation of discipline towards those inmates, it is next to impossible to force buy-in. |
| 21 | 1. CHS & SSO leadership should review CDC recommendations for cleaning and disinfection and incorporate them into policies and procedures and post assignments.<br>2. Establish supervised procedures and post orders for disinfection of high touch surfaces several times a day, throughout the jails.<br>3. Establish procedures and post orders for cleaning shared equipment and monitor compliance.<br>4. Evaluate cleaning solutions to sure they are EPA registered disinfectants effective against SARS CoV-2 for respective surfaces.<br>5. In COVID-10 medical isolation units, detainee workers should wear full PPE in accordance with their duties and consistent with CDC. | SSO<br><br>SSO<br><br>BOTH<br><br>SSO<br><br>SSO | 1   SSO – SSO reviews the CDC recommendations on a regular basis to ensure they are up to date with cleaning protocols. We are exploring ways to incorporate these recommendations into policies and post assignments.<br>2. SSO - This is already in place. Both facilities are cleaned multiple times a day.<br>3. SSO - All work areas, including those with shared equipment, have cleaning supplies available and education is ongoing for staff to maintain safe and clean work environments.<br>4. SSO - We use Concrobium to clean the facility and we give the inmates Simple Green d Pro Five to clean their dorms/barracks. Both products are EPA registered.<br>5. Infection Prevention Coordinator provided training materials to staff, procedures for cleaning have been posted in clinical areas, and there is a health inspection process which includes daily audits of clinical areas.<br>SSO - In Isolation housing units the inmate workers do not have contact with any of the inmates. They are given masks and gloves when they enter the empty pods. |
| 22 | 1. CHS and SSO should continue to provide and monitor compliance with staff and inmate wearing of face masks.<br>2. If not already done, develop a procedure for systematic inspection and resupply of hygiene items throughout the facility, including access to soap and paper towels. | BOTH<br><br>SSO | 1. Same response as earlier.  Infection Prevention Coordinator will complete periodic reviews/feedback for CHS staff.<br>SSO – Inmate mask wearing was covered in the above response on page 2. Staff mask wearing continues to be directed and adherence to the directive has been more efficient and keeps improving.<br>2. SSO – These items are readily available for the inmates. |
| 23 | 1. SSO and CHS leadership should reinforce messaging about not coming to work when ill and inform staff of any changes in personnel policies.<br>2. SCJ health care and custody leadership should ensure COVID-19 symptom and temperature | BOTH<br><br>BOTH<br><br>BOTH | 1. This was discussed with SME Monitor and noted in Staff Guidance page 21. To date, this has not been an issue.  DPS sends out emails when there are changes in policy.  Since the State has made periodic changes, County leaves policy has continued to evolve. |

5

County COVID-19 Practices in Correctional System
Response to Medical SME Monitor Report
December 4, 2020

| Page | Medical SME Monitor Recommendations | Staff | CHS Response |
|---|---|---|---|
| | screening is performed for all persons (county employees, contractors, arresting officers, and visitors, etc.)<br>3. The results of the screening should be documented and maintained for a designated period of time established by policy (see sample form used to record staff screenings).  Such documentation is evidence that screening is taking place and may assist in case of a disease outbreak and subsequent contact investigations.<br>4. Follow CDC recommendations for employee contact investigations.<br>5. CHS and SSO review what types of PPE is readily available when needed.   Even with the use of PPE, staff should employ social distancing consistent with their duties. | BOTH<br>BOTH | Supervisors/staff are encouraged to call the DPS Leaves staff.  Email and phone numbers are noted on page 21.<br>SSO – This has not been an issue for us. All of the employees are well aware of COVID and not coming to work when experiencing symptoms.<br>2. Employee screening is noted in Staff Guidance, pages 20 – 21.  This was also discussed in meetings with Medical SME and in correspondence (9/28/20).<br>  SSO - SSO completes temperature checks for each jail.  Pending staffing from agencies/clearance, designated health staff (C.N.A.) will complete CHS and SSO employee screening including temperature checks and symptom screening. All of these actions will be recorded on video.<br>3. Employee Screening Form will be maintained for a 30 day period.  Will add in the next staff guidance.<br>SSO – This process will be recorded on video. That will be our form of documentation.<br>4. Public Health is notified of any staff results.  Staff also complete contact investigations and inform Public Health.<br>SSO – CDC guidelines are followed for contact tracing.<br>5. PPE is addressed on pages 4 – 5 of Staff Guidance.<br>SSO – PPE protocol is followed. The appropriate PPE items are used and in stock. Inventory is taken on a regular basis. Social distancing, regardless of the situation, is always encouraged. |
| 24 | 1. CHS and SSO should intensify its efforts to obtain compliance with staff and detainee face masking and social distancing.  For detainees this includes increased detainee education (verbal orientation, videos, handouts, posters in English and Spanish, inmate handbook, etc.) at the time of arrival at the jail and on an ongoing basis.  Incorporate monitoring and enforcement of detainee masking | BOTH<br><br>BOTH | 1. This is the same item as masking earlier but adds social distancing.  In addition to earlier responses, social distancing is defined in Staff Guidance, page 4, and have also corresponded with Medical SME on physical distancing.  Will add additional information about social distancing in the next staff guidance. Although it is practice, will add a section about prompting inmates to wear masks when engaging in encounters (health/mental health) and to practice social distancing in groups (MH).   As noted earlier, Infection Prevention Coordinator will |

6

County COVID-19 Practices in Correctional System
Response to Medical SME Monitor Report
December 4, 2020

| Page | Medical SME Monitor Recommendations | Staff | CHS Response |
|------|-------------------------------------|-------|--------------|
| | in CHS and SSO policies and procedures and post orders. | | complete periodic reviews of CHS. This was clarified in 11/16/20 Staff Guidance.<br>SSO - Covered in previous reply. With regards to social distancing, we have limited the number of cells/inmates out at a time for dayroom. We have given the inmates masks with directives to wear them at all times when they are out of their cell but discipline is the only way to enforce the directive and that is not our goal. |
| 25 | 1. CHS, SSO and public health should collaborate to develop and implement policies and procedures to operationalize strategies to implement social distancing for all aspects of institutional life to the extent possible in the jails.<br>2. CHS, SSO and public health should develop a system to monitor and enforce compliance with social distancing.<br>3. Monitoring should be focused on high risk areas such as holding cells where proximity and duration of exposure are significant risk for transmission. | Both<br><br><br><br>Both<br><br>SSO | 1. Social distancing is defined in the Staff Guidance and staff use social distancing wherever feasible.  See responses to prior item.<br>SSO - Enforcement of social distancing among inmates is difficult without imposing disciplinary sanctions. We limit the number of inmates placed in holding tanks. Where they stand and how close they stand to others is impossible to manage without bringing discipline into the picture. We will continue to educate them through signage and we explore creative ways to make improvements in this area of the report.<br>2. As noted earlier, the Infection Prevention Coordinator will complete periodic reviews of CHS staff.<br>SSO – See the answer listed in the previous category.<br>3. SSO – These areas are monitored and every effort is made to minimize the number of inmates placed in holding tanks. As stated above, where the inmates stand and how close they stand to one another is difficult to enforce without bringing discipline into the picture. |
| 25 | 1. CHS and SSO should monitor compliance with the revised screening procedures. | Both | 1. The Inmate Screening Tool was revised in early October during meetings with the Medical SME.  Infection Prevention Coordinator will also periodically monitor compliance with the Inmate Screening Tool.<br>SSO – This process has been amended. It is currently being monitored. |
| 26 | 1. Continue testing all new arrivals for SARS CoV-2. Consider rapid testing on admission to immediately identify and medically isolate infected | CHS | 1. Testing (PCR) all new arrivals during the Intake Quarantine period is an established practice and there is no plan to discontinue PCR testing. Staff have considered rapid testing but will not be using it at this time. Reasons – a) Staff resources are needed for COVID and Influenza |

County COVID-19 Practices in Correctional System
Response to Medical SME Monitor Report
December 4, 2020

| Page | Medical SME Monitor Recommendations | Staff | CHS Response |
|---|---|---|---|
| | persons and perform PCR testing prior to release from quarantine. | | Clinics. b) The intake volume is high.  c) The rapid test is not readily available yet with finger stick. Will reconsider use pending availability of the rapid response finger stick test. |
| 27 | 1. I strongly recommend that SCJ continue to explore strategies to permit 14 day quarantine of new intakes and Federal Bureau of Prison detainees. However, at this time, at Main Jail, SSO does not have the bed space capacity to increase intake from 7 to 14 days. | SSO CHS | 1. As discussed with the Medical SME, CHS/SSO have extensively reviewed the feasibility of the 14 day intake. SSO does not have sufficient space.   Will change the intake quarantine for federal prison transfers to 14 days.  This was changed in the 11/16/20 Staff Guidance. SSO – Federal prisoners are now being placed on a 14 day quarantine period. We do not have the ability to place all intakes on a 14 day quarantine period due to limited bed space. |
| 27 | 1. Do not house COVID-19 suspects in the same housing unit with close contacts due to the risk of airborne transmissions. | SSO | SSO - With the exception of SLF – Ramona (RCCC), this does not happen. In SLF, the female inmates are locked in closed cells so they are isolated from one another. At MJ all confirmed cases are housed in the same pod, isolated from all other inmates. All of our intakes are housed with cohorts of the same calendar day, having the same non-exposure or possible exposure to COVID designation. |
| 28 | 1. CHS should monitor staff compliance with health checks including that nurses make appropriate referrals when patients become symptomatic or have abnormal temperatures or oxygen saturation levels. | CHS | 1. Infection Prevention Coordinator will complete periodic review of health checks.  Results will be shared with Supervising Nurses, designated Senior Health Program Coordinators, and Nursing/Medical Directors.  Per physician feedback, nurses have been referring to providers when there are abnormal findings or change in symptoms. |
| 29 | 1. Amend CHS Staff Guidance to reflect actual practices with delivery of medical care on quarantine units.<br>2. SSO should provide access to showers in accordance with ACA standards and/or Title 15 requirements for detainees in quarantine or medical isolation. | CHS SSO | 1.  Patient care is described in the Staff Guidance, pages 11 – 14.<br>2. SSO - All intake inmates are given the opportunity to shower upon arrival at their intake floor. Currently RCCC is conducting a trial of how to conduct additional isolation showers in an efficient manner. |
| 30 | 1. Ensure that guidance documents and order sets in the electronic health record are consistent with correct terminology.<br>2. Train health care and custody staff regarding correct interpretation of quarantine and isolation. | CHS BOTH CHS | 1. New terminology for COVID Housing was reviewed and approved by Medical SME in early October.  The Housing Populations are listed in the Staff Guidance on pages 6-7.  Order sets in E.H.R. were created and placed in the EHR. |

8

County COVID-19 Practices in Correctional System
Response to Medical SME Monitor Report
December 4, 2020

| Page | Medical SME Monitor Recommendations | Staff | CHS Response |
|---|---|---|---|
| | 3. Monitor correct application of housing decisions regarding placement of detainees with confirmed or suspect COVID-19 to prevent inadvertent transmission of COVID-19. | | 2. Managers discussed the COVID Housing Populations definitions with staff and these were in use prior to latest guidance. SSO – This has already been done during virtual shift briefings and through email. It will also be addressed in the new SSO Staff Guidance document. 3. Templates for nursing/SSO note type of COVID housing and are used whenever an inmate is placed or moved. |
| 31 | 1. Recommend that CHS Guidance also be clarified to specify the timeframe for medical providers to conduct record review for asymptomatic patients. 2. Nurses should carefully screen medically vulnerable COVID-19 patients with a low threshold for referral to medical providers. 3. CHS leadership monitor nurse compliance with health checks and appropriateness of provider referrals, as well as the quality of provider evaluations. | CHS CHS CHS | 1. Will clarify timeframe of provider review of medical records for asymptomatic patients within 48 hours in the next guidance. 2. Nurses are currently screening medically vulnerable patients through health checks and referrals to providers. 3. Nurse compliance was addressed in an earlier response (see item for Medical SME, page 28).  Periodically, the Medical Director will review the appropriateness of provider referrals and quality of provider evaluations and provide feedback.   This was added to the 11/16/20 Staff Guidance. |
| 32 | 1. Unless requiring increased medical monitoring due to symptoms, both males and females should be housed outside of main medical unit. 2. Both males and females should be provided access to health and mental health care, TV, reading materials, showers, and telephone privileges. 3. Test respiratory isolation rooms daily to ensure functioning properly. | CHS BOTH SSO | 1. The established practice is that the Medical Director or designee will determine if patients need to be housed within the medical units due to concomitant serious illness which requires monitoring. 2. CHS provides necessary health and mental health care. SSO – All inmates are provided reading materials by social workers and also have access to tablets. Every inmate has access to medical/mental health Kites and can be referred if the ask. They also have access to make calls only to their attorney. RCCC is facilitating a pilot program to offer showers/phone calls to both the male and female inmates who are in isolation/quarantine housing. 3. SSO – There are four Respiratory Isolation rooms at the Main Jail and they are tested daily by County Department of General Services staff. |

9

County COVID-19 Practices in Correctional System
Response to Medical SME Monitor Report
December 4, 2020

| Page | Medical SME Monitor Recommendations | Staff | CHS Response |
|------|-------------------------------------|-------|--------------|
| 33 | 1. Monitor and require detainees to properly wear a face mask at all times during transport outside of isolation. | SSO | SSO – This is already being done |
| 33 | 1. Amend CHS Staff Guidance and SSO policy to provide COVID-19 cases or suspects tissues and lined trash receptacle, or ensure that detainees have sufficient supplies of toilet paper. | SSO? | 1. CHS Staff Guidance was revised 11/16/20 to include a statement that SSO provides COVID-19 Cases or Suspects with sufficient toilet paper and has lined trash receptacles in the day room under supervision. SSO - Each inmate has access to an unlimited supply of toilet paper. This toilet paper can be used in lieu of tissue. There is no need for a lined trash receptacle in their cells. The inmates can place the used paper in the toilet. |
| 34 | 1. Given bed space demands as well as work-load associated with COVID-19 monitoring, I recommend CHS Guidance be consistent with CDC Guidance and not exceed it, except on a case basis. | CHS | 1. This was reviewed by CHS/SSO in October and methods to double check timeframes were initiated.  Timeframe may be exceeded on a case by case basis per medical direction. |
| 34 | 1. CHS and SSO leadership should continue to ensure staff and detainees are trained on CDC infection control guidelines and provided appropriate PPE to comply. 2. Monitor compliance to adherence to infection control principles & practices. | BOTH  BOTH | 1. Staff receive training on new practices and infection control.  To date staff have received training on use of PPE, physical distancing, basic universal source control measures such as masking and hygiene, evaluation of patients in COVID housing, and employee screening. Additionally, educate staff on changes in Staff Guidance. SSO – Education is ongoing for SSO 2. Infection Prevention Coordinator will conduct periodic monitoring. SSO – The officers are continuously reminded of the importance of wearing appropriate PPE equipment when dealing with inmates in isolation/quarantine. Their supervisors monitor this during their rounds . Video is available for review if needed. |

*The Mental Health SME recommendation descriptions were lengthy so only abbreviated content is listed below.*

| Page | Mental Health SME Monitor Recommendations | Staff | CHS Response - MH |
|------|-------------------------------------------|-------|-------------------|
| 18 | 1. Frequent communication with caseload.... 1.a. MH Staff reserve time during CHS clinical contact... 1.b. Personal opinions are off limits. | MH | 1a. MH Staff are implementing patient education expectations and documentation for patients on the MH caseload. This was outlined in the COVID-19 Staff Guidance (10/22/20).  Staff communication and training will be completed by 11/11. |

County COVID-19 Practices in Correctional System
Response to Medical SME Monitor Report
December 4, 2020

| | | | |
|---|---|---|---|
| | | | 1b. Staff are provided regular updates regarding COVID-19 transmission and prevention.  Staff are required to comply with daily symptom reviews, mandatory masking and wearing of goggles/face shields during patient interactions.  Staff are also aware they cannot share personal opinions regarding COVID-19.  This was clarified in the 11/16/20 Staff Guidance. |
| 20 | 2.  Frequent communication between MH, Medical & SSO on COVID… MH voice in COVID plans.<br>2.b. Shift briefing/huddle…<br>2.c. Regular management meetings (SSO, MH & Medical executives) – consent decree | BOTH<br><br><br>BOTH | 2. MH programs (2P/IOP/JBCT) have daily huddles/rounds that include custody.<br>SSO - This is already taking place. SSO has a team of officers, who are led by a sergeant, working directly with CHS. Their sole responsibility is overseeing the IOP/JBCT/ROC inmates who participate in the program. They work closely with JPS and all of the social worker assigned to the program<br>2b. There are regular meetings with custody/health/mental health.<br>SSO -   We hold a weekly meeting with CHS and SSO staff.<br>2c. There are periodic meetings regarding consent decree.  Most of the updates are in the Executive Team Meetings unless they are topic-specific. MH reviews and has input into the COVID-19 Staff Guidance revisions.<br>SSO - For the past few months, we have been holding weekly meetings to address COVID related and Consent Decree issues. CHS, and SSO have all been part of this process. |
| 21 | 3.  Utilize COVID procedure in existing incentive system.<br>3.a. Reexamine current incentive program & change. | MH<br><br>MH | 3. We will implement this recommendation in our IOP, JBCT, and Acute Psychiatric Unit programs.<br>3a. We are in the process of revamping our incentive programs to include this recommendation. |
| 21 | 4.  Adhere to COVID-19 procedures.<br>4.a. Remind inmates – hand washing & masks. | MH<br>BOTH | 4. See response to item 1.<br>   SSO - This is being done daily. In an effort to further remind the inmates about the importance of washing their hands and wearing a mask, we are placing signs in each pod. |
| 21 | 5.  Group treatment should consider social distancing & review group schedule.<br>5.a. Recommend max group size – 6. | MH | 5. The 2P/IOP/JBCT participants program together within their respective classification. They are encouraged to practice good hand hygiene and wear their mask. Those that do are provided with an incentive.<br>5a. MH staff will evaluate the feasibility of this recommendation. This may be problematic secondary to staff and space limitations. |

County COVID-19 Practices in Correctional System
Response to Medical SME Monitor Report
December 4, 2020

| 22 | 6.   Group treatment opportunities should be increased.<br>6.a. Review existing schedules to maximize treatment – individual and group. | MH | 6. We will review staffing and group schedules to determine the feasibility of this recommendation.<br>6a. See response to 6. |
|---|---|---|---|
| 22 | 7.   MH staff monitoring should increase for inmates on isolation or quarantine status.<br>7.a. Recommended during shift briefings/huddles, those detainees on isolation or quarantine status be reviewed by all staff – CHS, MH, SSO – challenges, expectations & goals.<br>7.b. Staff should conduct daily rounds for those on isolation/quarantine units… | MH<br><br>BOTH<br><br><br><br>MH | 7. Staff is unlikely to achieve this recommendation due to current staffing levels. Medical staff and custody staff refer patients who have a mental health diagnoses and need services. MH staff will see and assess these patients based on existing timelines to care.<br>7a. Will review staffing and group schedules to determine the feasibility of this recommendation.<br>SSO - This is already taking place during the weekly meeting/briefing between CHS and SSO staff.<br>7b. MH staff are unable to do daily rounds.  Medical staff do health checks and ask if patients need any other services. |
| 23 | 8. Confidentiality must be prioritized.<br>8.a. Reeducate staff about resources such as classroom.<br>8. b. Reeducate on noting location/confidential in notes.<br>8.c. Seek other confidential space. | MH | 8. A hard stop was added to MH electronic health record encounters containing confidentiality questions.  Prior to completing documentation, MH staff must select if a visit was confidential or not confidential. If the visit is not confidential, MH staff are required to state the reason(s) why.<br>8a. On 10/28/20, MH staff were re-educated about using the unoccupied classroom, attorney booths, or sound machines to help achieve auditory privacy.<br>8b. See response to 8.<br>8.c See response to 8a. |
| 24 | 9.   Medication administration should be at a reasonable time.<br>9.a. SSO noted prior solution… | MH | 9.   In September, there were a few modifications to pill call.  Nurses try to group areas with higher distribution of psychotropic medications so patients may receive their medications earlier.  Nursing administration is working on shift changes for nursing staff which are effective January 2021.  Main Jail Pharmacy plans to expand hours effective January 2021 which should also assist in improving pill call |
| 25 | 10. Those on isolation/quarantine should have same privileges and property.<br>10.a. Increase access to showers.<br>10.b. No communal soap.<br>10.c. Hand sanitizer. | SSO | 10a. SSO - All intake inmates are allowed access to shower upon arrival at their intake floor. Currently RCCC is conducting a trial of how to conduct additional isolation showers in an efficient manner |

County COVID-19 Practices in Correctional System
Response to Medical SME Monitor Report
December 4, 2020

| | | | 10b. Every inmate is issued their own individual bar of soap and will be given a new one once they need it. It is possible one may have been left by an inmate and used by another, but there are NO communal bars of soap. 10c. This is being explored and will most likely happen. Hand sanitizer will be placed in locations where a sink and soap are not accessible. We are currently looking into options to have dispensers placed in supervised areas where they are needed. |
|---|---|---|---|
| 25 | 11. Review unit schedules/develop updated schedules with structured/unstructured activities. | MH | 11. Staff are in the process of refining the treatment schedule to include reference to unstructured activities (dayroom, etc.) |
| 26 | 12. Review release planning procedures and ensure occurring early… | MH | 12. Staff continue to review the discharge planning process. Currently there are limitations due to staffing. Staff are in the final stages of recruiting and hiring additional staff which will assist in implementing recommendations. |
| 26 | 13. Continue to work on increasing clinical activities… prioritize clinically focused versus movement groups. | MH | 13. There are limited options for physical activity at the Main Jail. Staff try to find a balance between helping patients have more physical/recreational activity and providing clinically focused treatment. At this point, the schedule appears well-balanced but will review further for refinement and to ensure we are providing clinically relevant treatment. |