MICHAEL J. HADDAD (SBN 189114)
JULIA SHERWIN (SBN 189268)
TERESA ALLEN (SBN 264865)
BRIAN HAWKINSON (SBN 341856)
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, CA 94612
Telephone:     (510) 452-5500
Facsimile:      (510) 452-5510

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTHONY GALLEY, Deceased, by and through his Co-Successors in Interest, P.P. and B.P., minors, through their mother and Next Friend, Christina O'Neil, Individually and as Co-Successors in Interest for ANTHONY GALLEY, Deceased,<br><br>            Plaintiffs,<br>   vs.<br><br>COUNTY OF SACRAMENTO, a public entity; FORMER SACRAMENTO COUNTY SHERIFF SCOTT R. JONES, in his individual capacity; Jail Commander ANTHONY PAONESSA, Jail Medical Director VEER BABU, M.D., ERICA WOODS, R.N., and DOES 1–20; individually, jointly, and severally,<br><br>            Defendants. | Case No. 2:23-cv-00325-WBS-AC<br><br>**NOTICE OF RELATED CASES** |

Case No. 2:23-cv-00325-WBS-AC:  NOTICE OF RELATED CASES

NOTICE TO ALL PARTIES AND COUNSEL OF RECORD IN *MAYS, et al. v. COUNTY OF SACRAMENTO*, NO. 2:18-cv-02081-TLN-KJN AND IN *GALLEY, et al. v. COUNTY OF SACRAMENTO, et al.*, NO. 2:23-cv-00325-WBS-AC:

Plaintiffs in *Galley, et al. v. County of Sacramento, et al.*, No. 2:23-cv-00325-WBS-JC, by and through their attorneys, Haddad & Sherwin LLP, hereby give notice that their new civil action (*Galley*) is related to *Mays, et al. v. County of Sacramento*, No. 2:18-cv-02081-TLN-KJN.

## **ANALYSIS**

Under Eastern District Local Rule 123, an action is related to another action when: (1) both actions involve the same parties and are based on the same or similar claim; (2) both actions involves the same property, transaction, or event; (3) both actions involves similar questions of fact and law and their assignment to the same Judge or Magistrate Judge is likely to effect substantial savings of judicial effort, either because the same result should follow in both actions or otherwise, or; (4) for any other reasons, it would entail substantial duplication of labor if the actions were heard by difference Judges or Magistrate Judges.  L.R. 123(a)(1)-(4).

Here, *Mays* and *Galley* involve similar issues, questions of law, parties, and events, and it appears that "their assignment to the same Judge . . . is likely to effect substantial savings of judicial effort." L.R. 123(a)(3).

*Galley* is a civil rights and wrongful death/survival action arising from defendants' deliberate indifference to the serious medical needs of Anthony Galley, a pretrial detainee, resulting in Mr. Galley's death on February 15, 2022.  (See *Galley* Complaint, 2:23-cv-00325-WBS-JC, ECF Dkt. 1).[1]  Specifically, medical staff at Sacramento County Main Jail failed to adequately screen Mr. Galley upon intake, and failed place him on alcohol withdrawal protocols essential to his health and safety, as required both by their own written policies and national clinical standards.  (*Id.* at ¶¶ 10, 24).  Jail and medical staff further failed to monitor, evaluate, and treat Mr. Galley for symptoms of alcohol withdrawal over the next two days, as he awaited to be processed out of the booking loop.  (*Id.* at ¶¶ 25, 26).  All of those failures occurred despite that: Mr. Galley provided

---

[1] For the Court's convenience, a true and correct copy of the *Galley* Complaint is attached with this filing as **Exhibit 1**.

Case No. 2:23-cv-00325-WBS-AC:  NOTICE OF RELATED CASES                                         1

information about his alcohol dependence and risk of withdrawal during his intake evaluation; medical staff had access to records from Mr. Galley's previous detentions at the Main Jail which documented his substance use disorders and history of serious withdrawal symptoms; and Mr. Galley asked to be seen by medical staff after his intake exam, but his request was denied. (*Id.* at ¶¶ 23, 26). On his third day in the booking loop, Mr. Galley had a seizure and died, under circumstances consistent with untreated alcohol withdrawal. (*Id.* at ¶¶ 26-28, 46, 48).

*Mays* is a class action lawsuit that similarly concerns dangerous and unconstitutional conditions at Sacramento County Main Jail. (*Id.* at ¶ 46, n.1). In January of 2020, a settlement was reached in *Mays* whereby the County of Sacramento entered into a Consent Decree requiring implementation of a broad Remedial Plan to revise policies and improve conditions and medical care at the Main Jail. (*Id.*). Detoxification Protocols are among the areas specifically addressed in the Consent Decree. (*Id.* at ¶ 47). **Sacramento County was bound by the *Mays* Consent Decree at the time of Anthony Galley's death.** Pursuant to the Consent Decree, Court Experts are to advise the Court on the County's compliance with the terms of the decree every 180 days. (*Id.* at ¶ 46, n.1). To date, three such Monitoring Reports have been completed and filed in *Mays*. (*Id.*). **Each of the three Monitoring Reports filed so far by Court Experts in *Mays* has included an entire subsection on Detoxification Protocols.** (*Id.* at ¶¶ 47, 49, 50).

The Third Monitoring Report, published in October of 2022, specifically addresses Mr. Galley's wrongful death, concluding that "*[Mr. Galley's] case represents a profound failure to recognize, monitor, and treat a patient at risk of severe alcohol withdrawal. The patient was not evaluated by a medical provider in accordance with policy.*" (Third Monitoring Report, *Mays v. County of Sacramento*, 2:18-cv-02081-TLN-KJN, ECF Dkt. 162-1, p. 76) (emphasis in original). The Third Monitoring Report further documents an instance, also in February of 2022, in which "four of seven patients in the women's holding tank were in active withdrawal and no action was taken by custody or health care staff to intervene." (*Id.*). Ultimately, the Court Experts concluded that the County was "noncompliant" with all the specific goals in the Consent Decree concerning Detoxification Protocols, and offered several recommendations for how the County and its jail

managers could address those failures and begin providing constitutionally adequate care.  (*Id.* at 74, 77; See also *Galley* Complaint, ¶ 47).

The First and Second Monitoring Reports – both published *before* Mr. Galley's death – likewise document specific incidents where jail and medical staff failed to place patients with known substance use disorders and risk of serious withdrawal symptoms on proper detoxification protocols, resulting in preventable pain and suffering to those patients.  (*Galley* Complaint, ¶ 49, 50).  And, like in the Third Monitoring Report, the Court Experts concluded in the First and Second Monitoring Reports that the County was noncompliant with detoxification protocol requirements outlined in the Consent Decree, and offered suggestions for how the County and its jail managers could address those failures.  (*Id.*)  The First Monitoring Report also documents that the County's Standardized Nursing Procedures (SNPs) for alcohol, benzodiazepine, and opiate withdrawal were "not compliant with the remedial plan nor with nationally recognized treatment guidelines" and that "the County [was] not complying with their own Withdrawal Treatments Standardized Nursing Procedures (SNP) requirements."  (First Monitoring Report, *Mays v. County of Sacramento*, 2:18-cv-02081-TLN-KJN, ECF Dkt. 136-1, p. 43).

It is apparent from the Monitoring Reports that detoxification protocols and related policies and practices has been, and continues to be, a significant issue in *Mays*.  Those same County policies and practices concerning detoxification protocols are central to the *Galley* action.  And the individual Defendants named in *Galley* – former Sheriff Scott. R. Jones, Jail Commander Anthony Paonessa, Medical Director Veer Babu, and Nurse Erica Woods – have each likely played a role in implementing and maintaining (or failing to implement and maintain) policies and practices consistent with the Consent Decree concerning detoxification protocols and medical evaluation of patients upon intake at the Main Jail.

A key legal question *Galley* is whether the individual Defendants were deliberately indifferent to the medical needs, safety, and conditions of confinement of pretrial detainees like Anthony Galley.  (*Galley* Complaint, ¶¶ 31, 32, 36-38, 52, 53, 55, 62, 63).  The standard of deliberate indifference, of course, has always been at the center of the *Mays* litigation, as a prong of the Eighth and Fourteenth Amendment analyses concerning inmates and pretrial detainees,

respectively. *See Grenning v. Miller-Stout*, 739 F.3d 1235, 1238 (9th Cir. 2014); *See also Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (holding that the Fourteenth Amendment standard for violation of the right to adequate medical care for pretrial detainees is objective deliberate indifference). While the deliberate indifference issue in *Galley* ultimately may be a question of fact for a jury to decide, this Court would first have to determine whether there are sufficient facts for a reasonable jury to so find, and likely, whether reasonable officials would have had fair notice under clearly established law that their conduct would violate rights. The *Mays* Court's orders and the County's response to them, including the County's conduct under the Consent Decree, would thus become part of the issues to be decided in *Galley*.

The *Mays* Court's familiarity and prior oversight with facts and issues giving rise to the *Galley* action, as well as its extensive institutional knowledge concerning medical services, decision-making, and practices within the County's Main Jail, would be invaluable to deciding the claims in *Galley* efficiently, consistent with any orders or rulings in *Mays*, and in a manner likely to produce fair and consistent outcomes in other potentially related cases. The *Mays* Court also is in the best possible position to address allegations that the County's detoxification protocols and other related policies and practices relevant to *Galley* were out of compliance with what was required by the Consent Decree.

There is substantial overlap between *Mays* and *Galley* concerning legal issues, events, parties, and other facts and issues related to detoxification protocols at the Main Jail at the time of, and leading up to, Mr. Galley's death. Relating the cases will save time and effort that a less-familiar judge would need to get up to speed.

For the reasons stated herein, *Galley* Plaintiffs respectfully request that their case be considered related to the *Mays* case under Local Rule 123.

Dated: February 28, 2023                    HADDAD & SHERWIN LLP


/s/ *Brian Hawkinson*
BRIAN HAWKINSON
Attorneys for Plaintiffs

Case No. 2:23-cv-00325-WBS-AC:  NOTICE OF RELATED CASES                             4